## WILSON v. SMITH.

### (Circuit Court of Appeals, Third Circuit. January 14, 1904.)

### No. 12.

1. EXECUTORS — LEGACIES — ACTIONS — STATUTES — CONSTRUCTION — FOREIGN ASSETS.

Act Pa. Feb. 24, 1834, § 50 (P. L. 83), provides that a legatee may bring an action at law against executors having in their hands sufficient assets to pay the debts of the testator, and the legacies by him bequeathed, to recover the legacy; section 53 declares that in such action, upon a plea of want of sufficient assets, the action must be suspended until an account can be taken in the orphans' court; and section 55 provides that, if it shall appear from the account that no assets are in the hands of the executor which ought to be applied to the payment of the legacy demanded, judgment of nonsuit shall be entered. *Held*, that such statute did not extend to foreign assets distributable under the laws of another state, and by the courts of that state.

2. SAME—JUDGMENTS—RES JUDICATA.

Under Act Pa. Feb. 24, 1834, conferring on the orphans' court jurisdiction in all cases for the recovery of legacies, and giving the court of common pleas concurrent jurisdiction, a judgment on the merits in a proceeding in the orphans' court by a legatee to compel a foreign executor, to whom ancillary letters had been issued, to collect assets in Pennsylvania, to account therefor for the purpose of compelling payment of the legacy, dismissing the legatee's application, was res judicata of his claim, and precluded the maintenance of a subsequent action in the Pennsylvania court of common pleas against the executor to recover the legacy.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 117 Fed. 707.

Thomas Cahall, for appellant.

Richard L. Ashhurst and Benj. Nields, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. Under the statutes of Pennsylvania, and the decisions of the Supreme Court of the state, it is very clear that the orphans' court has jurisdiction in all cases for the recovery of legacies. Brightly's Purd. Dig. p. 618, pl. 250, Act Feb. 24, 1834, § 47 (P. L. 82); Dundas' Appeal, 73 Pa. 474, and cases and acts of

Assembly there cited in the opinion delivered by the court. The orphans' court is invested with authority to make distribution of the estate in the hands of executors or administrators to and among the persons entitled thereto, as well upon the application of a legatee as upon the application of any person interested, and that court is clothed with power to determine all questions standing directly in the way of distribution to legatees and other claimants. Dundas' Appeal, supra. The jurisdiction of the court of common pleas for the recovery of legacies, in so far as it exists, is only concurrent with that of the orphans' court. In respect to the settlement of the accounts of executors or administrators the jurisdiction of the orphans' court is exclusive, as will be seen upon reference to sections 50, 53, 54, and 55 of the act of February 24, 1834 (P. L. 83); Brightly's Purd. Dig. p. 619, pl. 259; Id. p. 620, pl. 262 et seq. Section 50 gives to a legatee an action at law against executors "having in their hands sufficient assets to pay all the just debts of the testator and the legacies by him bequeathed"; section 53 provides that in such action, upon a plea of want of sufficient assets, the action must be suspended until an account is taken in the orphans' court, and the amount, if any, payable on such legacy is ascertained; section 54 provides that if any other plea be pleaded in such action, and the issue thereon be decided against the executor, and judgment entered against him, the executor nevertheless may aver want of sufficient assets, and thereupon execution shall be stayed until an account shall be taken in the orphans' court as provided in section 53; and section 55 provides that:

"If it shall appear, by the account taken in the orphans' court, that there are no assets in the hands of such executor which ought to be applied to the payment of the legacy demanded * . * * judgment of nonsuit shall thereupon be entered."

Having thus stated the law of Pennsylvania in respect to proceedings for the recovery of legacies, we are prepared to consider the case presented by this record. The facts material here are as follows: Samuel Harlan, Jr., a citizen of the state of Delaware, and having his domicile there, died on February 6, 1883, having first made his last will and testament, appointing executor thereof Thomas B. Smith, to whom letters testamentary were issued by the register of wills of New Castle county, in the state of Delaware. The principal assets of the decedent's estate were in Delaware, of which state the executor was a citizen and resident. There were, however, some assets in the state of Pennsylvania; and on the 28th of May, 1883, ancillary letters were granted by the register of wills of the county of Philadelphia to the executor, Thomas B. Smith. In and by said will a legacy of $4,000 was bequeathed to James H. Wilson. On the 2d of June, 1894, James H. Wilson presented to the orphans' court in and for the county of Philadelphia, in the state of Pennsylvania, his petition setting forth the death of Samuel Harlan, Jr., his will, the bequest of $4,000 thereby made to the petitioner, the grant in the state of Delaware of letters testamentary to Thomas B. Smith, and the subsequent grant to him of ancillary letters in the state of Pennsylvania; that assets in the state of Pennsylvania came into the hands of the executor, Thomas B. Smith; that the executor had filed no account

of the administration of the estate in the state of Pennsylvania; that the petitioner was a resident of Pennsylvania; that he had made demand upon the executor for the payment of his legacy, and that the same had not been paid; and the petitioner prayed that a citation be awarded by the orphans' court to the said Thomas B. Smith to show cause why he should not file an account of his administration of the decedent's estate in the state of Pennsylvania. The court issued such citation. The executor appeared and answered the petition. After a hearing upon the merits the orphans' court made a decree dismissing the petition. The grounds for this decree are set forth by the court in its opinion filed. The court states that it was shown that when the petitioner, in the year 1884, demanded payment of his legacy, he was confronted with a note for $5,000 which he had given to Samuel Harlan, Jr., for money loaned by the latter after the date of the will, and was informed by the executor that the loan was intended to cover the legacy, or at least the note was a set-off against the legacy; that the petitioner took no steps in assertion of his claim until July 12, 1893, when he brought suit in Delaware for the recovery of his legacy, which suit he subsequently discontinued; that there was in Pennsylvania no other person having any right to an account of the ancillary administration; and that the executor "was justified in supposing that there was no occasion for an account in Pennsylvania, and that he might, as he did, bring the assets coming into his hands in that jurisdiction directly into his account as executor of the domicile, without waiting for a formal decree so remitting them." The court declared that, under the circumstances, it would be grossly inequitable to compel a second accounting in Pennsylvania, and the court stated that:

"While the court of the ancillary jurisdiction may, in the exercise of a sound discretion, award payment to a resident legatee or distributee before ordering remission of the balance, it is not bound, nor will it do. so, where questions exist which can only be properly determined under the law of the testator's domicile."

On November 24, 1894, James H. Wilson brought an action of assumpsit in a court of common pleas of the county of Philadelphia against Thomas B. Smith, executor of the last will and testament of Samuel Harlan, Jr., deceased, for the recovery of said legacy. In his statement of claim the plaintiff averred as the ground of his action the grant in Pennsylvania of ancillary letters to the defendant; his receipt, as ancillary executor, of assets in this jurisdiction sufficient to pay the legacy; demand of payment and refusal; and that the defendant had failed to file any inventory and appraisement or account in this jurisdiction of the estate which here came into his hands. Upon the defendant's petition the cause was removed into the Circuit Court of the United States for the Eastern District of Pennsylvania. Afterwards, upon the defendant's motion (acquiesced in by the plaintiff, it would seem), the case was transferred to the equity side of the Circuit Court on the ground that it involved a matter of equitable cognizance. During the progress of the case the defendant died, and Samuel K. Smith, who became administrator de bonis non cum testamento annexo of Samuel Harlan, Jr., deceased,

was substituted as defendant. The case was heard in the Circuit Court upon the pleadings and proofs, and a decree was rendered against the plaintiff, who has appealed therefrom to this court.

The grounds upon which the court below rested its decision, as stated in its opinion, were, first, that the plaintiff was concluded as to the matter involved in this action by the former adjudication of the orphans' court; and, second, that, aside from that adjudication, upon an independent consideration of the case the plaintiff's laches was a bar to his present action. The assignments of error contest the correctness of each of these grounds of decision.

A decree dismissing a bill in equity which is absolute in its terms, unless made upon some ground which does not go to the merits, is a final determination of the controversy, and constitutes a bar to any further litigation of the same subject between the same parties. Durant v. Essex Company, 7 Wall. 107, 19 L. Ed. 154; Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004. And in the absence of words of qualification accompanying the decree, such as "without prejudice," or other terms indicating a right or privilege to take further proceedings on the subject, the decree of dismissal is presumed to be rendered on the merits. Id. These principles, we think, are applicable to a decree of the orphans' court dismissing a petition relating to a subject-matter within the jurisdiction of the court. In the present instance we need not resort to any presumption that the decree of dismissal by the orphans' court was on the merits, for this affirmatively appears by the record.

What was the subject-matter of the proceeding in the orphans' court? Clearly it was the petitioner's claim to payment of his legacy out of the assets of the decedent's estate which had come into the hands of the executor under and by virtue of the ancillary letters granted in this jurisdiction. Over those assets the orphans' court had plenary jurisdiction. The controversy in the orphans' court concerned the appropriation of those assets to the petitioner's legacy. The immediate purpose of the petition, it is true, was to compel the settlement by the executor of an account of the ancillary administration. But such accounting was the preliminary and appropriate step to reach those assets. The application thereof to the payment of his legacy was the real object which the petitioner sought. In a word, the proceeding in the orphans' court was for the recovery by the petitioner of his legacy from the ancillary executor. Now, what was the subject-matter of the subsequent action brought in the court of common pleas? Can it be said to have been any other than that which was involved in the prior proceeding? We think not. There was a change of forum, but the subject-matter of controversy and the parties were the same. The action, as we have seen from the recitals of the plaintiff's statement of claim, was based altogether on the ancillary assets in Pennsylvania. This was necessarily so. The act of 1834 cannot be construed to extend to foreign assets distributable under the laws of another state, and by the courts of that state.

The action in the court of common pleas for the recovery of a legacy is a special statutory remedy to enforce payment out of assets in the hands of the executor applicable to such legacy. The pro-

visions of the act of 1834 make this very plain. The action thereby given is against executors "having in their hands sufficient assets to pay all the just debts of the testator and the legacies by him bequeathed." If an insufficiency of assets is pleaded, the action is to be stayed until an account shall be taken in the orphans' court, and the amount, if any, payable on the legacy sued for, is ascertained; and, if it appear upon such account taken that there are no assets in the hands of the executor properly applicable to the payment of the legacy demanded, judgment of nonsuit shall be entered. A recovery of a legacy in an action at law, then, ultimately depends upon the adjudication of the orphans' court.

The Circuit Court, we think, was right in holding that the plaintiff was concluded by the decree of the orphans' court upon his petition. By that decree it was settled finally that there were no assets in the hands of the ancillary executor applicable to the payment of the plaintiff's legacy. The decree dismissing the petition was an end of controversy on that subject. Under the act of 1834 a finding by the orphans' court, upon an account taken pending an action at law, that there are no assets which ought to be applied to the payment of the legacy demanded, is decisive against the plaintiff in the action. We see no reason why the like adjudication of the orphans' court made before the bringing of suit should not be equally conclusive against the plaintiff. Having reached this conclusion upon the question of res adjudicata, we think that it is not necessary for us to express any opinion upon the question whether, independently of the decree of the orphans' court, the plaintiff's alleged laches was a bar to his action.

The decree of the Circuit Court is affirmed.